*Fee Paid*
*S1*
*99*

**KRALIK & JACOBS LLP**
Lois Moonitz Jacobs (SBN 106537)
e-mail: lois.jacobs@kralikjacobs.com
301 North Lake Avenue, Suite 202
Pasadena, California 91101
Tel.: 626 844-3505
Fax: 626 844-7643

Attorneys for Plaintiff
IndyMac Bank, F.S.B.

**FILED**

2008 MAY -6  A 11: 48

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

**E-FILING**

**ADR**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDYMAC BANK, F.S.B., a federally chartered savings bank,<br><br>          Plaintiff,<br><br>     vs.<br><br>LOC D. NGUYEN, an individual,<br>LINH T. NGUYEN, an individual, and<br>DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No. C08 02328 RS<br><br>**COMPLAINT FOR DECLARATORY RELIEF UNDER THE TRUTH-IN-LENDING ACT** |

     IndyMac Bank, F.S.B. ("INDYMAC"), for its claim against Defendants Loc D. Nguyen and Linh T. Nguyen ("Defendants"), and each of them, alleges, upon knowledge with respect to itself and its own acts and upon information and belief as to all other matters, as follows:

-1-

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

ORIGINAL

1

## JURISDICTION

2      1.      This Court has subject matter jurisdiction over this action pursuant to

3  28 U.S.C. §§ 1331 and 1337(a).

4

5

## INTRADISTRICT ASSIGNMENT

6      2.      This action is subject to assignment to the San Jose Division pursuant

7  to Local Rule 3-2(e) of this Court as the matter arises in the County of San Clara

8  because Defendants reside there or own the property involved herein, which is

9  located there.

10

11

## VENUE

12      2.      This Court has personal jurisdiction over Defendants based on the fact

     that they reside and/or own property in the State of California.

13      3.      Venue in this Judicial District is proper pursuant to 28 U.S.C. §

14  1391(a)(1) in that the Defendants reside in Santa Clara County, California, and

15  within this Judicial District.

16

17

## NATURE OF ACTION

18      4.      This case involves an actual controversy, within the jurisdiction of

19  this Court, and a judicial declaration is necessary regarding the rights and other

20  legal relations between INDYMAC and Defendants, as set out below.  Therefore,

21  the relief requested by INDYMAC is specifically authorized by 28 U.S.C. § 2201

22  and 2202, and Federal Rule of Civil Procedure 57.

23

24      5.      By this action, INDYMAC seeks a judgment (i) declaring that

25  INDYMAC has not violated the federal Truth in Lending Act, 15 U.S. C. § 1631 *et*

26  *seq*, in connection with a transaction whereby Defendants refinanced a mortgage

27  loan secured by certain real property located at 3091 Knickerson Drive, San Jose,

28

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

California 95148 (the "Property"); and (ii) establishing reasonable and equitable procedures that adequately protect INDYMAC while simultaneously effectuating Defendants' right to rescind the transaction under 15 U.S.C. § 1635; or (iii) in the alternative, declaring Defendants' rescission demand null and void if they are unable or unwilling to reasonable effectuate that demand by returning to INDYMAC the net loan proceeds as required.

## PARTIES

6.    INDYMAC is a federally chartered savings bank with its principal place of business in Los Angeles County, California.  It is authorized and does business in this Judicial District as well as elsewhere in the State of California and the United States.

7.    INDYMAC is informed and believes that Defendants are residents of Santa Clara County, California:

## FACTUAL BACKGROUND

8.    On or about November 18, 2007, Defendants entered into a mortgage loan transaction whereby they borrowed $620,000 from INDYMAC (the "Loan"). The terms of the Loan are set forth in a Fixed/Adjustable Rate Note (the "Note") and the Loan is secured by a Deed of Trust against the Property.  A true and correct copy of the Note is attached hereto and incorporated herein by this reference as Exhibit A and the Deed of Trust is attached hereto and incorporated herein by this reference as Exhibit B, both of which contain what purport to be Defendants' signatures.  Together with the Note and Deed of Trust, Defendants' signatures appeared on several other documents regarding the Loan, including a Truth-in-Lending Disclosure Statement ("TIL"), also dated November 18, 2007, a true and correct copy of which is attached hereto and incorporated herein by this

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

1  reference as Exhibit C. (All but the last four digits of the Loan Number have been
2  redacted on all Exhibits hereto).

3       9.    The Loan was closed and the Loan proceeds were disbursed on or
4  about December 4, 2007. According to the Settlement Statement prepared for this
5  transaction by the settlement agent, Virtual Escrow, $557,570.93 of the Loan
6  proceeds were used to pay off a pre-existing mortgage loan from Washington
7  Mutual Bank secured by the Property, which Defendants owned for some time
8  prior to December 2007. The Settlement Statement further reflects disbursements
9  from the Loan proceeds of $22,957.11 to Addison Federal Credit Union and
10 $75.00 to Bank of America for the purpose of paying off other obligations of
11 Defendants. In addition, the Settlement Statement shows that Defendants received
12 cash at closing in the amount of $7,817.01 from the Loan proceeds. A true and
13 correct copy of the final Settlement Statement on the form required by the U.S.
14 Department of Housing and Urban Development is attached hereto and
15 incorporated herein by this reference as Exhibit D.

16      10.    In mid- to late December 2007, after the closing of the Loan,
17 Defendants informed INDYMAC for the first time that the terms of the Loan as set
18 forth in the Note, Deed of Trust, TIL and other loan documents were not as
19 Defendants had understood the Loan terms to be and that certain documents did
20 not contain Defendants' actual signatures. .

21      11.    On January 2, 2008, INDYMAC notified Defendants that it would
22 reopen Defendants' right to cancel by giving Defendants an additional period of
23 time to elect to cancel the Loan and provided Defendants with new Notice of Right
24 to Cancel forms. A true and correct copy of the letter from INDYMAC to
25 Defendants containing this documentation, along with copies of the TIL and the
26 original signed Notice of Right to Cancel form for the Loan is attached hereto and
27 incorporated herein by this reference as Exhibit E. In the January 2, 2008 letter,

28

---

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

1  INDYMAC also notified Defendants that INDY MAC would credit amounts that

2  Defendants had paid to date to the balance of the loan but that the remaining

3  balance thereafter must be paid in full.

4    12. By re-opening Defendants' right to rescind the Loan and providing

5  Defendants with new Notices of Right to Cancel, INDYMAC cured any potential

6  violation of the federal Truth in Lending Act because the new Notice of Right to

7  Cancel forms were given within sixty (60) days of the original transaction in

8  accordance with 15 U.S.C. § 1640(b).

9    13. On or about January 10, 2008, Defendants exercised their right to

10  cancel and rescind the November 18, 2007 mortgage transaction as set forth in the

11  letter from their counsel, Lan D. Nguyen, along with the e-mail message to which

12  it was attached.  The letter (which shows the erroneous date of January 23, 2008)

13  and accompanying e-mail are attached hereto and incorporated herein by this

14  reference as Exhibit F.  Although this letter demanded the termination of

15  INDYMAC's security interest in the Property, it did not agree to tender back the

16  net Loan proceeds owed by Defendants to INDYMAC nor did it make any

17  arrangements to do so in accordance with the provisions of 15 U.S.C. § 1635(b).

18    14. Thereafter, from approximately mid-January 2008, up to the date of

19  this filing, INDYMAC communicated with Defendants or their counsel by

20  telephone and in writing on numerous occasions in an attempt to make

21  arrangements for the return of the Loan proceeds owed by Defendants to

22  INDYMAC.  However, none of these discussions resulted in a confirmation by

23  Defendants or their counsel that Defendants were willing or able to repay the net

24  Loan proceeds to INDYMAC.

25    15. On March 25, 2008, INDYMAC wrote to Defendants and their

26  counsel to set forth the terms of a rescission agreement, whereby INDYMAC

27  would unwind the transaction in accordance with the Truth in Lending Act and

28

-5-

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

1    Defendants would repay the net amount of $587,920.05 to INDYMAC within

2    thirty days of their receipt of INDYMAC's letter. The repayment amount of

3    $587,920.05 reflected a credit of $32,079.95 in total charges and fees paid by

4    Defendants in connection with the mortgage transaction. A copy of the March 25,

5    2008 letter and accompanying Implementation of Rescission Agreement is

6    attached hereto and incorporated herein by this reference as Exhibit G.

7         16.    To date, Defendants have failed to sign the Implementation of

8    Rescission Agreement or take any other steps to complete the rescission by

9    arranging for the repayment of the net amount due to INDYMAC, which is

10   required contemporaneously with the release of INDYMAC's lien on the Property.

11   Instead, Defendants have demanded that, before they will take any steps to fulfill

12   their obligations to return the net loan proceeds in accordance with 15 U.S.C. §

13   1635(b) and 22 C.F.R. § 226.23(d), INDYMAC pay their attorneys' fees and

14   additional unspecified amounts to compensate for alleged damages they claim to

15   have suffered. A true and correct copy of Defendants' counsel letter dated April

16   22, 2008 regarding their demands is attached hereto and incorporated herein by this

17   reference as Exhibit H.

18        17.    On April 23, 2005, INDYMAC's counsel advised counsel for

19   Defendants that INDYMAC would commence this action if Defendants did not

20   confirm that they were ready and willing to repay the net Loan proceeds due to

21   INDYMAC by May 31, 2008, thereby effectuating Defendants' right to rescind the

22   transaction. A true and correct copy of the April 23, 2008 letter to counsel for

23   Defendants is attached hereto and incorporated herein by this reference as Exhibit

24   I. In response to this letter, counsel for Defendants informed counsel for

25   INDYMAC that Defendants were willing pay INDYMAC only $575,000, rather

26   than the $587,920.05 that they are required under TILA to tender back to

27

28                                    **-6-**

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

INDYMAC. A true and correct copy of this e-mail message is attached hereto as Exhibit J.

18.    It would be inequitable to require that INDYMAC cancel the lien that secures the INDYMAC Loan by reconveying its Deed of Trust over the Property without having reasonable procedures in place to ensure the return of the net Loan proceeds that Defendants received in connection the November 18, 2007 mortgage transaction.

## CLAIM FOR RELIEF

### *(Declaratory Relief Under the Truth in Lending Act, 15 U.S.C. § 1635(b) and C.F.R. § 226.23(d))*

19.    INDYMAC re-alleges and incorporates herein by this reference paragraphs 1 through 18, inclusive, of this Complaint as if fully set forth in their entirety.

20.    At this time, an actual controversy within the jurisdiction of this Court exists and a judicial declaration is necessary regarding the legal rights and duties between INDYMAC and the Defendants.

21.    INDYMAC respectfully requests that the Court exercise its inherent equitable authority, which is also expressly recognized in 15 U.S.C. § 1635(b) and 22 C.F.R. § 226.23(d)(4), to declare that INDYMAC has not violated the Truth-in-Lending Act, 15 U.S.C. § 1631 *et seq.*, in an way in connection with the November 18, 2007 mortgage transaction and to establish reasonable and equitable procedures that adequately protect INDYMAC while effectuating the Defendants' right to rescind the transaction under 15 U.S.C. § 1635(b).

22.    In this regard, INDYMAC is entitled to a declaration requiring that Defendants return the net Loan proceeds, in the amount of $587,920.05, that they

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

1  received from INDYMAC promptly and simultaneously with release of the lien on

2  the Property that secures the Loan.

3     23.    In the alternative, should Defendants fail, refuse, be unable or

4  unwilling to return the net Loan proceeds and thereby effectuate their rescission

5  demand without further and unreasonable delay, INDYMAC seeks a declaration

6  that such rescission is null and void and, instead, the terms of the Loan, as set forth

7  in the Note, Deed of Trust and other Loan documents shall control and shall be

8  fully enforceable as of the date the Loan closed and, as a result of which, the

9  Parties shall have such rights, obligations and responsibilities as set forth in the

10  Note, Deed of Trust and other Loan documents, including all obligations by

11  Defendants to make payments and all rights of INDYMAC to receive such

12  payments or otherwise enforce the remedies applicable upon Defendants' default.

13
14  **WHEREFORE**, INDYMAC, respectfully prays for judgment against

Defendants, and each of them, as follows:

15
16     (i) Declaring that INDYMAC has not violated the Truth-in-Lending

17  Act, 15 U.S. C. § 1631 et seq., in any way in connection with the November 18,

2007 mortgage transaction;

18
19     (ii) Establishing reasonable and equitable procedures that adequately

20  protect INDYMAC while effectuating the Defendants' right to rescind the

November 18, 2007 mortgage transaction, including a requirement that Defendants

21
22  return the net Loan proceeds they received from INDYMAC in the amount of

$587,920.05 promptly and simultaneously with release of the lien on the Property

23
24  that secures the Loan;

25     (iii) In the alternative, should Defendants be unable or unwilling to

26  effectuate their rescission demand and return the net Loan proceeds to INDYMAC

in an expeditious manner, then declaring that the rescission demand is null and

27
28  void and that the rights, obligations and responsibilities of the Parties shall be as

-8-

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

1  set forth in the Note, Deed of Trust and other Loan documents as of the date the

2  Loan closed, including but not limited to Defendants' obligations to make monthly

3  mortgage payments and INDYMAC's right to enforce all remedies applicable

4  upon Defendants' default ;

5         (iv) For costs of suit and reasonable attorneys' fees incurred herein;

6  and

7         (v) For such other and further relief as the Court deems just and

8  proper.

9

10  Dated: May 5, 2008            **KRALIK & JACOBS LLP**

11

12                      By

13                              Lois Moonitz Jacobs

14                              Attorneys for Plaintiff

15                              IndyMac Bank, F.S.B.

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

COMPLAINT FOR DECLARATORY RELIEF UNDER
THE TRUTH-IN-LENDING ACT

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY FIXED PERIOD
### (1 Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

Loan #        7638

CERTIFIED TO BE A TRUE AND CORRECT COPY
MIN:                                    7638
BY ............................................................

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 14, 2007                     IRVINE                     California
[Date]                               [City]                      [State]

3091 KNICKERSON DRIVE, SAN JOSE, CA 95148

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  620,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is        INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.750        %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on    January,  2008            . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on     December  1, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        INDYMAC BANK, F.S.B., P.O. BOX 78826, PHOENIX, AZ 85062-8826
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $   3,487.50            before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - 1 YEAR LIBOR INDEX - Single Family
(Fixed and Interest Only Periods are the same)

Initials: _____

Form 5602

8480832   (0506)                VMP Mortgage Solutions, Inc. (800)521-7291                6/05



CERTIFIED TO BE A TRUE AND CORRECT COPY
BY _____ C. K. .
ATLANTIC BANCGROUP

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **December, 2017**, and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and 750/1000ths** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.750** % or less than **2.750** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **2.000** percentage points from the rate of interest I have been paying for the preceding **12** months. My interest rate will never be greater than **11.750** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)  Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Loan No:      7638
8480832   (0506)

Form 5602
6/05

CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____

AT VIRTUAL ESCROW

6.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.  **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

CERTIFIED ⊔ BE A TRUE AND CORRECT COPY
BY _____ C. L. ___
AT VIRTUAL REPROGRAPHICS

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS IS A TRUE AND CORRECT COPY

BY _____

AT VIRTUAL ESCROW

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LINH  THUY  NGUYEN                -Borrower

_____ (Seal)
LOC  DUY  NGUYEN                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[*Sign Original Only*]

Loan No:      7638

CERTIFIED TO BE A TRUE AND CORRECT COPY
BY _____
AT VIRTUAL ESCROW

**Recording Requested By:**
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

[Company Name]
**And When Recorded Mail To:**
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

[Name]
BLDG B, 901 E 104TH ST, SUITE 400/500

[Street Address]
KANSAS CITY, MO 64131

[City, State Zip Code]

————————————————[Space Above This Line For Recording Data]————————————————

MIN:        7638

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    **"Security Instrument"** means this document, which is dated  November 14, 2007  , together with all Riders to this document.

**(B)**    **"Borrower"** is  LOC DUY NGUYEN AND LINH THUY NGUYEN HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

**(C)**    **"Lender"** is  INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a        Federal Savings Bank        organized and existing under the laws of United States of America . Lender's address is  155 NORTH LAKE AVENUE, PASADENA, CA 91101

**(D)**    **"Trustee"** is  TRANSNATION TITLE INSURANCE CO.

**(E)**    **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No:        7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument
MERS Modified
The Compliance Source, Inc.                    Page 1 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                        © 2007, The Compliance Source, Inc.

Form 3005 1/01
Closing

CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____
AT VIRTUAL ESCROW

**(F)**    "**Note**" means the promissory note signed by Borrower and dated  November 14, 2007 .  The Note states that Borrower owes Lender  six hundred twenty thousand and NO/100ths

Dollars                        (U.S.

$    620,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December  1, 2037.

**(G)**    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)**    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) [specify] | | |

**(J)**    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)**    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)**    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)**    "**Escrow Items**" means those items that are described in Section 3.

**(N)**    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)**    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)**    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)**    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security



CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____

_____ ESCROW

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the            County            of SANTA CLARA            :

[Type of Recording Jurisdiction]            [Name    of    Recording Jurisdiction]

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number: 65445005
which currently has the address of  3091 KNICKERSON DRIVE
                                                              [Street]

SAN JOSE        ,                California    95148                                    ("Property Address"):
        [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
        1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment

Loan No:        7638

CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____

charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in

Loan No:        7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                       Closing
The Compliance Source, Inc.                    Page 4 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                             © 2007, The Compliance Source, Inc.



CERTIFIED A TRUE AND CORRECT COPY

BY _____

MUTUAL ESCROW

this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.**    Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.**    Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan,



CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____

AT VIRTUAL ESCROW

either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in

Loan No:       7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                                     Closing
The Compliance Source, Inc.                        Page 6 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                          © 2007, The Compliance Source, Inc.

CERTIFIED TO BE A TRUE AND CORRECT COPY
BY _____
AT VIRTUAL ESCROW

writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent

Loan No: 7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                          Closing
The Compliance Source, Inc.              Page 7 of 14      Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                              © 2007, The Compliance Source, Inc.



CERTIFIED TO BE A TRUE AND CORRECT COPY

AT VIRTUAL ESCROW

Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Loan No:    7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                 Form 3005 1/01
MERS Modified                                                                                    Closing
The Compliance Source, Inc.              Page 8 of 14       Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                    © 2007, The Compliance Source, Inc.



CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____

AT VIRTUAL ESCROW

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No:     7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument     Form 3005 1/01
MERS Modified     Closing
The Compliance Source, Inc.     Page 9 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com     © 2007, The Compliance Source, Inc.



CERTIFIED TO BE A TRUE AND CORRECT COPY
BY 
AT VIRTUAL ESCROW

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the



expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow

Loan No:    7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument      Form 3005 1/01
MERS Modified      Closing
The Compliance Source, Inc.     Page 11 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com      © 2007, The Compliance Source, Inc.



CERTIFIED TO BE A TRUE AND CORRECT COPY
AT VIRTUAL ESCROW

anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the



fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
LINH THUY NGUYEN                                -Borrower
                                                          *[Printed Name]*

_____ (Seal)
LOC DUY NGUYEN                                  -Borrower
                                                          *[Printed Name]*

_____ (Seal)
                                                          -Borrower
                                                          *[Printed Name]*

_____ (Seal)
                                                          -Borrower
                                                          *[Printed Name]*

———————————*[Acknowledgment on Following Page]*———————————

Loan No:        7638

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                                                     Closing
The Compliance Source, Inc.                          Page 13 of 14        Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                              © 2007, The Compliance Source, Inc.



## ACKNOWLEDGMENT

*CERTIFIED TO BE A TRUE AND CORRECT COPY*
*BY* _____
*AT VIRTUAL ESCROW*

State of _California_ §

County of _Santa Clara_ §

On _11-18-07_ , before me, _Shayan Kamrava_    [name and title of officer] personally appeared  LINH THUY NGUYEN and LOC DUY NGUYEN

, personally-known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

> SHAYAN KAMRAVA
> COMM. #1589800
> Notary Public-California
> LOS ANGELES COUNTY
> My Comm. Exp. June 25, 2009

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____ , page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date:_____

_____
(Trustee)

Loan No:    7638
California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument            Form 3005 1/01
MERS Modified
The Compliance Source, Inc.                 Page 14 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                    © 2007, The Compliance Source, Inc.



# TRUTH IN LENDING DISCLOSURE STATEMENT

DATE: November 14, 2007  LOAN #: 7638
CREDITOR: INDYMAC BANK, F.S.B.
NAME OF BORROWER(S): LINH THUY NGUYEN and LOC DUY NGUYEN

MAILING ADDRESS: 3091 KNICKERSON DR, SAN JOSE, CA 95148
PROPERTY ADDRESS: 3091 KNICKERSON DRIVE, SAN JOSE, CA 95148

| ANNUAL PERCENTAGE RATE The cost of your credit at a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | AMOUNT FINANCED The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.374% | $ 1,006,121.74 | $ 588,458.05 | $1,594,579.79 |

Your payment schedule will be: **monthly, as follows**

Construction Loan: ☐ If checked, this loan provides for interest-only payments during the construction period. Beginning _____, you will make periodic interest-only payments during the construction period, followed by payments of principal and interest as scheduled below.

| Number of Payments | Amount of Payments | When payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| 120 | 3,487.50 | 01/01/2008 | | | | | | |
| 239 | 4,900.33 | 01/01/2018 | | | | | | |
| 1 | 4,900.92 | 12/01/2037 | | | | | | |

Demand Feature: ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature.

Variable Rate: ☒ If checked, this loan contains a variable rate feature. Disclosures about the variable rate feature were provided to you earlier.

Assumption: Someone buying your property ☐ cannot, unless otherwise provided by federal law, ☒ may, subject to conditions, be allowed to assume the remainder of the loan on the original terms.

Security: You are giving a security interest in the property located at: 3091 KNICKERSON DRIVE, SAN JOSE, CA 95148
You are giving a security interest in: **Your Property.**

Late Charge: If a payment is not received by the end of 15 days after the date it is due, you will be charged 5.00 % of the overdue payment.

Prepayment: If you pay this loan early you ☐ may ☒ will not have to pay a penalty. If you pay off an FHA insured loan, on a date other than the regular installment date, you may be assessed interest charges until the end of the month. You ☐ may be or ☒ will not be entitled to a refund of part of the finance charge.

Deposit: ☐ If checked, the annual percentage rate does not take into account your required deposit.

Property Insurance: Property insurance is required on this loan. Flood insurance may be required if the property is located in an area designated as an area having special flood hazards. You may obtain property insurance and, if required, flood insurance from anyone you want that is acceptable to Creditor.

Filing Fee: $ 200.00  (e)

"e" means estimate

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds.

☐ all dates and numerical disclosures except the late payments disclosures are estimates

November 14, 2007  20:30:20  Index = 4.4600  Margin= 2.750

The undersigned hereby acknowledge receipt of a completed copy of this Disclosure, and if this loan has a Variable Rate feature, a copy of an Adjustable/Variable Rate Loan Program Disclosure along with a copy of The Consumer Handbook on Adjustable Rate Mortgages (CHARM Booklet). The undersigned understand that this is not a contract or a loan commitment.

| | |
|---|---|
| LINH THUY NGUYEN | 11/18/07 (Borrower) (Date) |
| LOC DUY NGUYEN | 11/18/07 (Borrower) (Date) |
| (Borrower) (Date) | (Borrower) (Date) |

**NOTE:** Payments shown above do not include reserve deposits for taxes, property or flood insurance.

Loan No:   7638

Truth in Lending Disclosure Statement (Multistate)
IndyMac Bank, F.S.B.                          Page 2 of 2                          8200IMU 11/00 Rev. 01/07

# ITEMIZATION OF AMOUNT FINANCED

Creditor
INDYMAC BANK, F.S.B.

3465 E FOOTHILL BLVD
PASADENA, CA 91107

Property Address
3091 KNICKERSON DRIVE
SAN JOSE, CA 95148
Loan No.        .7638
Preparation Date  November 14, 2007

Borrower(s)
LINH THUY NGUYEN
LOC DUY NGUYEN

Mailing Address
3091 KNICKERSON DR
SAN JOSE, CA 95148
Sales Price      N/A
Loan Amount   620,000.00

THIS FORM DOES NOT COVER ALL ITEMS YOU WILL BE REQUIRED TO PAY IN CASH AT SETTLEMENT. YOU
MAY WISH TO INQUIRE AS TO THE AMOUNTS OF SUCH OTHER ITEMS.  YOU MAY BE REQUIRED TO PAY
OTHER ADDITIONAL AMOUNTS AT SETTLEMENT.

| Service/Provider | Estimated Charges |
|---|---|
| LOAN AMOUNT | 620,000.00 |
| **FINANCE FEES AND CHARGES** | |
| 809 FUNDING FEE pd to: INDYMAC BANK | 760.00 |
| 810 TAX SERVICE FEE pd to: INDYMAC BANK | 75.00 |
| 825 LOL FLOOD DETERMINATION FEE pd to: LSI/FIS (FIDELITY) | 7.00 |
| 832 BROKER PROCESSING FEE pd to: A L G CAPITAL INC. | 1,215.00 |
| 837 BROKER ADMINISTRATIVE FEE pd to: A L G CAPITAL INC. | 1,015.00 |
| 862 BROKER ORIGINATION FEE pd to: A L G CAPITAL INC. | 26,040.00 |
| 901 Prepaid Interest(6.750%) 11/19/2007-12/01/2007 @ $116.2500/day | 1,395.00 |
| 1101 ESCROW/CLOSING AGENT FEE pd to: VIRTUAL ESCROW | 500.00 |
| 1112 SUB ESCROW pd to: LAND AMERICA | 75.00 |
| 1117 TITLE WIRE FEE pd to: LAND AMERICA | 30.00 |
| 1119 SIGNING FEE pd to: VIRTUAL ESCROW | 250.00 |
| 1120 E-MAIL FEE pd to: VIRTUAL ESCROW | 125.00 |
| 1125 COURIER / OVERNIGHT FEE pd to: VIRTUAL ESCROW | 50.00 |
| 1212 MERS TRANSFER FEE pd to: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS | 4.95 |
| Sub-Total Finance Fees and Charges | **31,541.95** |
| AMOUNT FINANCED | 588,458.05 |
| **OTHER FEES AND CHARGES** | |
| 803 APPRAISAL FEE pd to: GEMINI APPRAISAL          POC: 500.00 | |
| 808 Broker Compensation          PD by Lender: -1,500.40 | |
| 906 COUNTY TAX pd to: SANTA CLARA COUNTY | 2,792.56 |
| 1108 TITLE POLICY PREMIUM FEE pd to: LAND AMERICA | 1,270.00 |
| 1114 TITLE ENDORSEMENTS FEE pd to: LAND AMERICA | 125.00 |
| 1116 RECONVEYANCE TRACKING FEE pd to: TBD | 50.00 |
| 1201 RECORDING FEES pd to: SANTA CLARA COUNTY | 200.00 |
| Sub-Total Other Fees and Charges | 4,437.56 |
| TOTAL FEES AND CHARGES | 35,979.51 |
| **PAYOFFS** | |
| Sub-Total Payoffs | 0.00 |
| LOAN PROCEEDS | 584,020.49 |

The above Itemization of Amount Financed is made pursuant to the requirements of the Truth-in-Lending Simplification Act.

**A. SETTLEMENT STATEMENT** U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**FINAL**

| B. Type of Loan | | | | OMB No. 2502 0265 |
|---|---|---|---|---|
| 1. ☐FHA  2. ☐FmHA  3. ☒Conv. Unins.<br>4. ☐VA  5. ☐Conv. Ins. | 6. File Number<br>003123-CV | 7. Loan Number<br>:7638 | | Mortgage Insurance Number |

**C. Note:** THIS NOTE IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO ANY AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING. THEY ARE SHOWN HERE FOR INFORMATION PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Loc Duy Nguyen<br>Linh Thuy Nguyen<br>3091 Knicherson Drive<br>San Jose, CA  95148 | | IndyMac Bank, F.S.B.<br>3465 East Foothill Blvd.<br>Pasadena, CA  91107 |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 3091 Knicherson Drive<br>San Jose, CA  95148 | Virtual Escrow | |
| | Place of Settlement | Settlement Date |
| | 10200 Sepulveda Blvd., #160<br>Mission Hills, CA 91345 | December 4, 2007 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract Sales Price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 31,579.95 | 403. | |
| 104. Washington Mutual | 557,570.93 | 404. | |
| 105. Addltl. Items See Page #3 | 23,032.11 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 612,182.99 | 420. Gross Amount Due to Seller | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposits or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. New 1st Trust Deed | 620,000.00 | 502. Settl. chrgs. to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 620,000.00 | 520. Total Reductions in Amount Due Seller | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT FROM/TO SELLER | |
| 301. Gross Amounts due from Borrower (line 120) | 612,182.99 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 620,000.00 | 602. Less reductions in amount due Seller (line 520) | |
| 303.  CASH TO BORROWER | 7,817.01 | 603.  CASH FROM SELLER | |

L. SETTLEMENT STATEMENT

| | PAID FRO... BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION | | |
| Based on price $        @        % | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. Loan Origination Fee to ALG Capital (1st) | 26,040.00 | |
| 802. Loan discount | | |
| 803. Appraisal Fee Gemini Appraisal - POC $500.00 to ALG Capital (1st) | | |
| 804. Credit report | | |
| 805. Lender's Inspection fee | | |
| 806. Mortgage insurance application fee | | |
| 807. Assumption fee | 75.00 | |
| 808. Tax Service to IndyMac Bank, F.S.B. (1st) | 1,015.00 | |
| 809. Admin Fee to ALG Capital (1st) | 1,215.00 | |
| 810. Processing Fee to ALG Capital (1st) | 771.95 | |
| 811. Addtl. Items See Page #3 | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. Interest at $116.2500/day from 11/27/2007 to 12/01/2007 to IndyMac Bank, F.S.B. (1st) | 465.00 | |
| 902. Mortgage insurance | | |
| 903. Hazard insurance | | |
| 904. Flood insurance | | |
| 905. | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | |
| 1001. Hazard insurance | | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Reserves | | |
| 1009. | | |
| 1100. ESCROW AND TITLE CHARGES | | |
| 1101. Escrow Fee to Virtual Escrow | 530.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees | | |
| 1107. Attorney's fees | | |
| 1108. Title Insurance to LandAmerica Lender Services | 900.00 | |
| 1109. Lender's coverage $ | | |
| 1110. Owner's coverage $ | | |
| 1111. Policy Endorsements to LandAmerica Lender Services | 25.00 | |
| 1112. Sub Escrow Fee to LandAmerica Lender Services | 40.00 | |
| 1113. Addtl. Items See Page #3 | 190.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. Recording fees: Deed $; Mortgage $63.00; Releases $ to LandAmerica Lender Services | 63.00 | |
| 1202. City/County tax stamps | | |
| 1203. State tax/stamps | | |
| 1204. | | |
| 1205. | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. Shayan Kamrava for Signing Loan Documents | 250.00 | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1400. TOTAL SETTLEMENT CHARGES (ENTER ON LINES 103 SECTION J AND 502, SECTION K) | 31,579.95 | |

PAYOFF BREAKDOWN(S)

Payoff to Washington Mutual
TOTAL $557,570.93

| | |
|---|---|
| Principal Balance | 553,837.32 |
| Interest on Principal Balance at $104.3200/day from 11/01/2007 to 12/05/2007 | 3,694.61 |
| Forwarding Fee | 30.00 |
| Recording Fee | 9.00 |

Payoff to Bank Of America
TOTAL $75.00

| | |
|---|---|
| Forwarding Fee | 30.00 |
| Reconveyance Fee | 45.00 |

Payoff to Addison Federal Credit Union
TOTAL $22,957.11

| | |
|---|---|
| Principal Balance | 22,868.00 |
| Interest on Principal Balance | 16.15 |
| Other Fee | 72.96 |

**ADDITIONAL AMOUNTS DUE FROM BORROWER**

| | |
|---|---|
| Bank Of America   75.00 | |
| Addison Federal Credit Union 22,957.11 | |
| Total to line 105 | 23,032.11 |

**ADDITIONAL ITEMS PAYABLE IN CONNECTION WITH LOAN**

| | BORROWER | SELLER |
|---|---|---|
| LOL Flood Determination to LSI/FIS (1st) | 7.00 | |
| Funding Fee to IndyMac Bank, F.S.B. (1st) | 760.00 | |
| MERS to MERS (1st) | 4.95 | |
| Broker Comp to ALG Capital - POC $1,500.40 (1st) | | |
| Total to line 811 | 771.95 | |

**ADDITIONAL ESCROW AND TITLE CHARGES**

| | BORROWER | SELLER |
|---|---|---|
| Messenger Fee - Actual Cost to Virtual Escrow | 65.00 | |
| E-Documents Fee to Virtual Escrow | 125.00 | |
| Total to line 1113 | 190.00 | |

**IndymacBank**

3465 East Foothill Boulevard, Pasadena, CA 91107 · (800) 669-2300 · www.indymacbank.com

January 2, 2008

Linh Thuy Nguyen
Loc Duy Nguyen
3091 Knickerson Drive
San Jose, CA 95148

Re:     Re-disclosure of Notice of Right to Cancel
        Indymac Bank Loan #:      7638
        Property Address: 3091 Knickerson Drive, San Jose, CA 95148

Dear Borrower(s):

On November 18, 2007, you entered into a loan agreement with Indymac Bank, which included a lien on your principal residence. At that time you were given a copy of the disclosure required by the Federal Truth-in-Lending Act. You were also given a *Notice of Right to Cancel* ("NORC") form showing that you had three business days during which you could cancel the transaction without penalty or cost.

In giving you this period of rescission, certain errors were made in the documentation. Please be advised that we are again giving you a period of three business days during which you may cancel your loan without penalty or cost. Enclosed are <u>an original and two copies</u> of the <u>new</u> "Notice of Right to Cancel," <u>one</u> copy of the original disclosure form ("NORC") and <u>one</u> copy of the final Truth-in-Lending Disclosure Statement.

**Upon receipt of this letter, please <u>sign and currently date</u> the new NORC and return the signed and dated form(s) to me, as soon as possible, but *no later than January 12, 2008.***

*If* you elect to cancel the loan, you may do so by signing under "I hereby cancel this transaction" and returning the form to me by the date indicated above. Please note that by canceling the transaction, all funds paid to date on the transaction will be credited to the balance of the loan, but the loan must also be paid in full as basically you are saying you do not want this loan.

Should you require additional information, you may contact me at (800) 669-2300 ext. 5909.

Indymac Bank appreciates your business and looks forward to the opportunity to be of service to you.

Sincerely,

Jeannine Marie Urias
FVP - Internal Controls Group
Email: Jeannine.Urias@IMB.com

**IndymacBank**

3465 East Foothill Boulevard, Pasadena, CA 91107 · (800) 669-2300 · www.indymacbank.com

# NOTICE OF RIGHT TO CANCEL

Date:  January 2, 2008
Loan No.:  7638

LENDER:  **Indymac Bank, F.S.B., A Federally Chartered Savings Bank**
Borrowers/Owners:  **Linh Thuy Nguyen**
Street Address:  **3091 Knickerson Drive**
City/State/Zip:  **San Jose, CA 95148**
Property Address:  **3091 Knickerson Drive, San Jose, CA 95148**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within **THREE BUSINESS DAYS** from whichever of the following events occurs last:

(1)  The date of the transaction, which is  November 18, 2007  ; or
(2)  The date you received your Truth in Lending disclosures; or
(3)  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security instrument is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security instrument on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL.**  If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Indymac Bank, F.S.B., a federally chartered savings bank**
**3465 East Foothill Boulevard**
**Pasadena, CA 91107**
**ATTN: Jeannine Urias, Internal Controls Group**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of  January 16, 2008  ; (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____         _____
SIGNATURE                                     DATE

---

**Receipt of Notice.**  I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners. Do not sign unless the dates in the boxes are completed.**

_____         _____
Linh Thuy Nguyen                              DATE

The undersigned hereby acknowledge receipt of a completed copy of this Disclosure, and if this loan has a Variable Rate feature, a copy of an Adjustable/Variable Rate Loan Program Disclosure along with a copy of The Consumer Handbook on Adjustable Rate Mortgages (CHARM Booklet). The undersigned understand that this is not a contract or a loan commitment.

LINH THUY NGUYEN                    11/18/07                LOC DUY NGUYEN                    11/18/07
                          (Borrower) (Date)                                         (Borrower) (Date)

                          (Borrower) (Date)                                         (Borrower) (Date)

**NOTE: Payments shown above do not include reserve deposits for taxes, property or flood insurance.**

Loan No:     7638

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

**DATE:** November 14, 2007      **LOAN #:** 7638

**CREDITOR:** INDYMAC BANK, F.S.B.

**NAME OF BORROWER(S):** LINH THUY NGUYEN and LOC DUY NGUYEN

**MAILING ADDRESS:** 3091 KNICKERSON DR, SAN JOSE, CA 95148

**PROPERTY ADDRESS:** 3091 KNICKERSON DRIVE, SAN JOSE, CA 95148

| ANNUAL PERCENTAGE RATE The cost of your credit at a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | AMOUNT FINANCED The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.374% | $ 1,006,121.74 | $ 588,458.05 | $1,594,579.79 |

Your payment schedule will be: **monthly, as follows**

**Construction Loan:** ☐ If checked, this loan provides for interest-only payments during the construction period. Beginning _____ , you will make periodic interest-only payments during the construction period, followed by payments of principal and interest as scheduled below.

| Number of Payments | Amount of Payments | When payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| 120 | 3,487.50 | 01/01/2008 | | | | | | |
| 239 | 4,900.33 | 01/01/2018 | | | | | | |
| 1 | 4,900.92 | 12/01/2037 | | | | | | |

**Demand Feature:** ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature.

**Variable Rate:** ☒ If checked, this loan contains a variable rate feature. Disclosures about the variable rate feature were provided to you earlier.

**Assumption:** Someone buying your property ☐ cannot, unless otherwise provided by federal law, ☒ may, subject to conditions, be allowed to assume the remainder of the loan on the original terms.

**Security:** You are giving a security interest in the property located at: **3091 KNICKERSON DRIVE, SAN JOSE, CA 95148**
You are giving a security interest in: **Your Property.**

**Late Charge:** If a payment is not received by the end of **15** days after the date it is due, you will be charged **5.00** % of the overdue payment.

**Prepayment:** If you pay this loan early you ☐ may ☒ will not have to pay a penalty. If you pay off an FHA insured loan, on a date other than the regular installment date, you may be assessed interest charges until the end of the month. You ☐ may be or ☒ will not be entitled to a refund of part of the finance charge.

**Deposit:** ☐ If checked, the annual percentage rate does not take into account your required deposit.

**Property Insurance:** Property insurance is required on this loan. Flood insurance may be required if the property is located in a area designated as an area having special flood hazards. You may obtain property insurance and, if required, flood insurance from anyone you want that is acceptable to Creditor.

**Filing Fee:** $ 200.00 (e)
"e" means estimate

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds.

☐ all dates and numerical disclosures except the late payments disclosures are estimates

Truth in Lending Disclosure Statement (Multistate)
IndyMac Bank, F.S.B.      Page 1 of 2      82001MU 11/00 Rev. 01/07

November 14, 2007    20:30:20     Index = 4.4600     Margin= 2.750

LENDER:      INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
BORROWER:    LINH THUY NGUYEN and LOC DUY NGUYEN
PROPERTY:    3091 KNICKERSON DRIVE, SAN JOSE, CA 95148
LOAN NO./MIN:    7638 /              7638

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel.** You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1)   the date of the transaction, which is;            November 14, 2007            ; or
(2)   the date you received your Truth in Lending disclosures; or
(3)   the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also canceled. Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

**How To Cancel.** If you decide to cancel this transaction, you may do so by notifying us in writing, at:

        INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
        3465 E FOOTHILL BLVD     ATTN: B2B Internal Controls
        PASADENA, CA 91107 – Fax: 626-440-7969

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of,   November 17, 2007  , (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I Wish To Cancel.**

_____                    Date: _____
                (Consumer)

**Receipt of Notice.** I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Do not sign unless the dates in the boxes are completed.**

_____                    Date:   11/18/07
LINH THUY NGUYEN              (Consumer)

---

Notice of Right to Cancel (H8) (Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 1

02201MU 12/97 Rev. 10/99
©2000, The Compliance Source, Inc.

LENDER:      INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
BORROWER:   LINH THUY NGUYEN and LOC DUY NGUYEN
PROPERTY:   3091 KNICKERSON DRIVE, SAN JOSE, CA 95148
LOAN NO./MIN:   7638 / :             7638

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel.** You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1)    the date of the transaction, which is;    | November 14, 2007 | ; or
(2)    the date you received your Truth in Lending disclosures; or
(3)    the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also canceled. Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

**How To Cancel.** If you decide to cancel this transaction, you may do so by notifying us in writing, at:

   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
   3465 E FOOTHILL BLVD    ATTN: B2B Internal Controls
   PASADENA, CA 91107 - Fax: 626-440-7969

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of, | November 17, 2007 |, (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I Wish To Cancel.**

_____            Date: _____
              (Consumer)

**Receipt of Notice.** I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Do not sign unless the dates in the boxes are completed.**

_____  11/18/07            Date: _____11/08/07_____
LOC DUY NGUYEN                (Consumer)

**Urias, Jeannine**

| | |
|---|---|
| **From:** | Nguyen Duy Lan [nguyen_duy_lan@yahoo.com] |
| **Sent:** | Thursday, January 10, 2008 12:00 AM |
| **To:** | Urias, Jeannine |
| **Cc:** | Loc Nguyen; Loc Nguyen |
| **Subject:** | Letter to IndyMac rescinding the loan |
| **Attachments:** | 1416673799-a002x0108-08.doc |



a002x0108-08.d
oc (58 KB)

Dear Jeannine,

Attached is an electronic copy of a letter I am sending you via regular mail.  Please call my office if you have any questions.

Always,

Lan.

Lan D. Nguyen
Attorney-at-Law
6633 NE Sandy Blvd., Suite B
Portland, OR 97213
Phone:       (503) 280-0123
Cell :        (503) 288-0123
Facsimile: (503) 288-0125

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

Be a better friend, newshound, and
know-it-all with Yahoo! Mobile.  Try it now.  http://mobile.yahoo.com/;
_ylt=Ahu06i62sR8HDtDypao8Wcj9tAcJ

THE LAW OFFICE OF
# LAN D. NGUYEN
ATTORNEY-AT-LAW
A PROFESSIONAL LAW CORPORATION
6633 NE Sandy Blvd., Suite B
Portland, OR 97213
Phone: (503) 280-0123
Cell: (503) 288-0123
Fax: (503) 288-0125
Lan.D.Nguyen@gmail.com

Admitted to Practice in Oregon and California

---

January 23, 2008

VIA REGULAR MAIL &
ELECTRONIC MAIL Jeannine.Urias@imb.com

Ms. Jeannine Marie Urias
FVP – Internal Controls Group
IndyMac Bank
3465 East Foothill Blvd.,
Pasadena, CA 91107

**Re: Mortgage Fraud – Loc & Linh Nguyen**

Dear Ms. Urias:

      My office represents Mr. and Mrs. Loc and Linh Nguyen ("Clients"), who are also my brother and sister-in-law. My clients reside at 3091 Knickerson Drive, San Jose and recently re-financed their home loan through IndyMac. I write to clarify a number of your misstatements of facts and of law in your letter dated January 2, 2008.

      You indicated that "certain errors were made in the documentation". That is a misleading understatement – my clients were defrauded. Their signatures were forged; pages in the loan documents containing critical information such as interest rate, terms, and costs were not given to my clients and the loan documents were submitted with fraudulently substituted pages containing higher interest rate, worse terms, and higher costs. This loan is void for fraud and violates many requirements of the Truth-in-Lending Act ("TILA").

      You also stated that "by canceling the transaction, all funds paid to date on the transaction will be credited to the balance of the loan, but the loan must also be paid in full as basically you are saying that you do not want this loan." That is a misleading misstatement of the law under TILA and the regulations thereunder.

Ms. Jeannine Marie Urias
January 23, 2008
Page 2

The Truth in Lending Act and Regulation Z require that "material disclosure" as defined by 15 USC 1602, including annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, must be given to my clients. This material disclosure was not made known to my clients because (1) copies of the critical pages containing annual percentage rate, finance charges, and loan costs were not given to my clients; and (2) similar pages but containing different annual percentage rate, finance charges, and loan costs were substituted when the loan documents were submitted. Regulation Z, Section 226.23 (a)(3) provides that "If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." My clients' right to rescind does not expire until three years after consummation because required material disclosures were not delivered to my clients.

Additionally, my clients were not provided with the notice disclosure required by Regulation Z, section 226.23 (b)(1). By sending Ms. Linh Nguyen an original and two copies of the Notice of Right to Cancel, you are attempting to cure IndyMac's previous failure to provide this notice of right to rescind.

My clients hereby exercise their right of rescission allowed under TILA, Regulation Z, section 226.23 (b)(1). You have twenty (20) days after receipt of this letter to take any action necessary to reflect the termination of IndyMac's security interest on my clients' home.

My clients reserve their rights under California laws, the Real Estate Settlement Procedures Act, and any other violations of TILA, including but not limited to any violations under Regulation Z, section 226.19. Please send my office a copy of the recorded instrument terminating your company's security interest in my clients' home. Thank you for your courtesies.

Very truly yours,
The Law Office of Lan D. Nguyen
A Professional Law Corporation


/s/


Lan D. Nguyen

LDN/me
Enclosures
cc:          Clients

 **IndymacBank**
Mortgage Professionals Group

10860 Gold Center Drive, Suite 400
Rancho Cordova, California 95670
Tel 916-379-6475  Fax 626-229-1204
Toll Free: 877-717-9977 x 6475
Email: david.pereira@imb.com
www.indymacbank.com

March 25, 2008

Mr. Lan D. Nguyen
Law Office of Lan D. Nguyen
6633 NE Sandy Blvd., Suite B
Portland, OR  97213

Linh Thuy Nguyen
Loc Duy Nguyen
3091 Knickerson Drive
San Jose, CA  95148

RE:    Loan No.       6404
          Rescission Agreement

Dear M. Nguyen:

Enclosed for your review is the following:

1. Rescission Agreement.
   a. This outlines the terms of our rescission agreement:
      i. The amount you need to pay to comply within the terms of the rescission agreement.
      ii. The agreement gives you 30 days to return the funds to us totaling $587,920.05.
2. Copy of the HUD-1 which was the foundation for the figures used to create the rescission agreement.

A copy set of these documents is being sent to Mr. Lan D. Nguyen, please confer with him before executing any documents. Please review these documents closely. If all of this meets with your approval, please do the following:

- On page one of the "Implementation of Rescission Agreement" in the highlighted spot, insert the date you are signing the agreement. For example, if you sign on March 3, 2008, insert the date of March 3, 2008.
- On page two of the "Implementation of Rescission Agreement" in the highlighted spot, insert the date that is 30 days from the date of signing. For example, if you sign on March 3, 2008, insert the date of April 3, 2008.
- Sign on Page 6 by your respective signatures.

If you have any questions on the dates, please give me a call and I will assist you.

We must have a signed agreement on its way to us by March 28, 2008. If you do not wish to sign the agreement or if you do not send the agreement by March 28, 2008, this matter will be referred to our legal department for them to file a Declaratory Relief Action with the court in order to protect our security interest in the property. However, if you have any questions or need clarification, give me a call and we can clear them up.

I am providing you a self addressed UPS envelope to return the agreement. I have also provided you copies please make sure that whatever dates you insert in the original you do so also on your copies.

If you would like for IndyMac Bank to provide you a refinance for the purpose of securing the funds to repay as required by your rescission agreement, you may contact:

John Wolverton  - 888-407-3863 Ext 1849

Keep in mind, you can secure the funds from any source of your choosing and you are not required to secure the funds from IndyMac Bank. If you have any questions or concerns on any of these documents or process, please feel free to contact me.

Sincerely,

David A. Pereira
Manager – Asst. Vice President
Corporate Compliance

IMPLEMENTATION OF RESCISSION AGREEMENT

Loan Number:        6404
MIPS Number:        7638
Customer:           Nguyen

This IMPLEMENTATION OF RESCISSION AGREEMENT (together with all exhibits hereto, the "Agreement") is dated effective as of _____, 200___ (the "Effective Date") and is entered into by and between IndyMac Bank, F.S.B. (the "Bank"), a federally chartered savings bank the home office of which is located in California, and Linh Thuy Nguyen and Loc Duy Nguyen (the "Customer"), natural persons (each of Bank and Customer being individually referred to herein as a "Party," and collectively, as the "Parties"). This Agreement is made with reference to the following facts:

A.    On or about November 1, 2007, the Customer submitted an application to Lender for a residential mortgage loan (the "Loan") secured by the property located 3091 Knickerson Drive, San Jose, CA 95148 (the "Property"). Bank ultimately agreed to provide a Loan to Customer in the original principal amount of $620,000.00. Bank has identified the Loan in its records as Loan Number     7638.

B.    On or about November 18, 2007, Customer executed closing documents relating to the Loan including, without limitation, a note payable to Lender in the amount of U.S. $620,000.00; a mortgage, deed of trust or security deed securing such note, to create a security interest in the Property; a final Truth-in-Lending Act disclosure statement as required by Section 226.18 of Federal Reserve Regulation Z (12 C.F.R. § 226.18); and one completed copies of a Notice of Right to Cancel (the "Notice") as required by Section 226.23 of Federal Reserve Regulation Z (12 C.F.R. § 226.23).

C.    Following consummation and funding of the Loan, Customer discovered an alleged defect in the Notice provided to Customer. On or about January 10, 2008, Bank received notification of Customer's intent to rescind the Loan under 12 C.F.R. § 226.23 based on an alleged incomplete copies of the Notice of Right to Cancel document.

D.    Bank does not admit to or acknowledge any defect in the Notice or the Bank's procedures relating to 12 C.F.R. § 226. Nevertheless, in the interests of resolving its dispute with the Customer in an amicable fashion, Bank is willing to effectuate Customer's rescission of the Loan in accordance with this Agreement.

E.    In accordance with 12 C.F.R. § 226, the Parties are obligated to take certain steps to implement the rescission of the Loan. These steps include (i) Bank's return of any money that Customer has given to anyone in connection with the Loan transaction, (ii) Customer's return of any money that Bank has paid to or at the direction of Customer, and (iii) Bank's taking any action necessary to reflect the termination of any security interest taken in the Property in connection with the Loan. By this Agreement, the Parties wish to implement these steps and to exchange mutual releases relating to all matters concerning the Loan and the implementation of the rescission of the Loan contemplated by this Agreement.

F.    Customer has elected, in their sole discretion and at their sole option, to fund the monies that they are required to pay to Bank in order to implement the rescission of the Loan from the proceeds of a new loan in the original principal amount sufficient to pay to the Bank the sum of U.S. $587,920.05 that they will obtain from any lender or source of their choosing (the "New Loan"), which New Loan will be evidenced and documented by a new set of loan documents and will be secured by the Property.

The Parties agree as follows:

1.    The Parties confirm that the Loan was rescinded effective upon the mailing of the rescission notice by Customer, which Customer has represented to be January 10, 2008 (the "Rescission Date").

Rescission Agreement v.3.18.08

Implementation Of Rescission Agreement

2.    Effective as of the Rescission Date, the Parties confirm that Bank is obligated to pay to Customer, in accordance with 12 C.F.R. § 226, the aggregate sum of U.S. $32,079.95 the "Bank Obligation"). The calculation of the Bank Obligation is set forth in Exhibit A to this Agreement, which Exhibit A is incorporated into and made a part of this Agreement. The Parties acknowledge and agree that the Bank Obligation has been calculated by starting with the charges that Customer paid at any time and to any person in connection with the Loan (either directly or by deduction from the Loan proceeds), and then by deducting from that amount all credits that Bank or any third party provided to Customer in connection with the closing of the Loan and other amounts provided to or for the benefit of Customer. The Parties hereby accept as true and complete, and agree not to challenge at any time, the calculation of the Bank Obligation as set forth in Exhibit A.

3.    Effective as of the Rescission Date, the Parties confirm that Customer is obligated to pay to Bank, in accordance with 12 C.F.R. § 226, the aggregate sum of U.S. $620,000.00 (the "Customer Obligation"). The Customer Obligation consists of the original principal amount of the Loan minus the principal already paid. The Parties hereby accept as true and complete, and agree not to challenge at any time, the calculation of the Customer Obligation.

4.    For the convenience of each of the Parties, the Parties have agreed to net the amount of the Bank Obligation against the amount of the Customer Obligation, with the result that the net amount owed by Customer to Bank is the sum of U.S. $587,920.05 (the "Customer Payment"). Customer agrees to pay the Customer Payment to Bank in order to implement the rescission of the Loan. Customer has elected, in their sole discretion and at their sole option, to fund the Customer Payment from the proceeds of the New Loan. Customer acknowledge that they are free to obtain funding for the Customer Payment from any source of their choice, and that they have chosen, at their own election, to fund the Customer Payment from the proceeds of the New Loan.

5.    This Agreement shall constitute an instruction to the closing attorney, title company, escrow, or other closing agent (the "Settlement Agent") for the New Loan to pay to Bank, on behalf of Customer, an amount equal to the Customer Payment, in immediately available funds, from the proceeds of the New Loan. Either Party may provide a copy of this Agreement to the Settlement Agent for this purpose. Each Party will execute and deliver such additional documents or instruments as the Settlement Agent or either Party may request from time to time in order to carry out the purposes of this Section 5 and the transactions contemplated by this Agreement.

6.    To the extent that it has not already done so, Bank shall, promptly upon its receipt of the Customer Payment, take all necessary steps to reflect the termination of any security interest in the Property that may have been created to secure the repayment of the Loan.

7.    Nothing in this Agreement invalidates, diminishes or constitutes a waiver of any right of rescission that Customer is entitled to exercise with respect to the New Loan, whether pursuant to 12 C.F.R. § 226.23 or otherwise.

8.    Anything in this Agreement to the contrary notwithstanding, either Party may terminate this Agreement and the obligations of both Parties under this Agreement (other than obligations under this Section 8) if, for any reason, the Customer Payment has not been paid to Bank by 5:00 P.M., Pacific Standard Time, on _____, 200___ . A Party wishing to exercise this right of termination may do so by providing a written notice of termination to the other Party. In the event of any such termination, each of the Parties shall then be obligated to perform the obligations, if any, imposed upon it by 12 C.F.R. § 226.23 and other applicable laws, but all as if the Bank had received notification of Customer's rescission of the Loan effective as of the effective date of the termination of this Agreement. This Section 8 shall survive any termination of this Agreement.

9.A.    Except as set forth in this Agreement, Bank, on behalf of itself and each of its present, former and future predecessors, officers, employees, directors, shareholders, subsidiaries, alter egos,

Page 2 of 7

Rescission Agreement v.3.18.08

Implementation Of Rescission Agreement

affiliates, partners, agents, attorneys, accountants, heirs, executors, administrators, conservators, principals, representatives, partnerships, partners, associates, incorporators, spouses, servants, and trusts, and each of their successors and assigns (collectively, the "Bank Parties") hereby release, fully release, and forever discharge Customer, and each of their present, former and future predecessors, officers, employees, directors, shareholders, subsidiaries, alter egos, affiliates, partners, agents, attorneys, accountants, heirs, executors, administrators, conservators, principals, representatives, partnerships, partners, associates, incorporators, spouses, servants, and trusts, and each of their successors and assigns (collectively, the "Customer Parties") from and against any and all claims, demands, damages, liabilities, rights, interests, actions, liens, sanctions, agreements, obligations, controversies, debts, costs, attorneys' fees, suits, judgments, orders, causes of action or chooses in action (collectively, "Claims") of whatever kind or nature, in law, equity or otherwise, whether absolute, contingent, known or unknown, asserted or unasserted, unforeseen, unanticipated, unsuspected or latent, which Bank Parties now, in the past, or in the future own or hold against the Customer Parties and which arose at any time from the beginning of the World through and including the Effective Date (the "Bank Release"). Without limiting in any manner the extent and scope of the Bank Release, the Bank Release includes all Claims involving or relating in any manner to the application for the Loan, the underwriting and processing of the Loan, the pricing for the Loan, the approval of the Loan, disclosures under and compliance with the Federal Truth-in-Lending Act (15 U.S.C. Section 1601 et seq.) ("TILA") and Federal Reserve Regulation Z (12 C.F.R. Part 226) ("Regulation Z"), all other disclosures and documentation for the Loan, the closing of the Loan, the Notice relating to the Loan, the manner of responding to Customer's notice of rescission of the Loan, and the manner in which the rescission of the Loan has been implemented by and under the provisions of this Agreement.

9.B.    Except as set forth in this Agreement, Customer, on behalf of themselves and each of the Customer Parties, hereby remise, fully release, and forever discharge Bank and each of the Bank Parties from and against any and all Claims of whatever kind or nature, in law, equity or otherwise, whether absolute, contingent, known or unknown, asserted or unasserted, unforeseen, unanticipated, unsuspected or latent, which Customer Parties now, in the past, or in the future own or hold against Bank Parties and which  arose at any time from the beginning of the World through and including the Effective Date (the "Customer Release"). Without limiting in any manner the extent and scope of the Customer Release, (i) the Customer Release includes all Claims involving or relating in any manner to the application for the Loan, the underwriting and processing of the Loan, the pricing for the Loan, the approval of the Loan, disclosures under and compliance with the TILA and Regulation Z, all other disclosures and documentation for the Loan, the closing of the Loan, the Notice relating to the Loan, the manner of responding to Customer's notice of rescission of the Loan, and the manner in which the rescission of the Loan has been implemented by and under the provisions of this Agreement, and (ii) Customer expressly understands, acknowledges and agrees that the Customer Release specifically includes a release of any and all Claims for attorney's fees that they may otherwise claim under TILA and/or Regulation Z or any state statute or regulation, it being their intention that the transaction contemplated by this Agreement shall constitute and be treated as the payment of any such attorney's fees.

9.C.    The foregoing releases extend to all rights and benefits of each Party under Section 1542 of the California Civil Code, and any similar law of any state, commonwealth or territory of the United States, which are hereby expressly waived by each Party.  Section 1542 reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

In connection with such waiver of all rights or benefits conferred under California Civil Code Section 1542 or other similar law, each Party is aware and hereby acknowledges that it may hereafter discover Claims or facts in addition to or different from those which may now be known or believed to be

Page 3 of 7

Rescission Agreement v.3.18.08

true with respect to the matters released herein, but that it is the intention of the Parties to hereby fully, finally, and forever settle and release all matters herein above specified whether known or unknown, suspected or unsuspected, which now exist, may exist or have previously existed between Parties to this Agreement. In furtherance of such intention, the releases herein given shall be, and shall remain, in effect as full and complete releases, notwithstanding the discovery of or the existence of additional or different Claims or facts, and the releases herein given shall operate as full and complete releases of any such additional Claims or facts.

9.D.    Bank, on behalf of itself and each of the Bank Parties, represents and warrants to Customer and the Customer Parties that the Bank Parties have not assigned or otherwise transferred or purported to assign or otherwise transfer to any person or entity, directly or indirectly, voluntarily, involuntarily or by operation of law, any Claims that are the subject of the Bank Release.

9.E.    Customer, on behalf of themselves and each of the Customer Parties, represents and warrants to Bank and the Bank Parties that the Customer Parties have not assigned or otherwise, transferred or purported to assign or otherwise transfer to any person or entity, directly or indirectly, voluntarily, involuntarily or by operation of law, any Claims that are the subject of the Customer Release.

9.F.    Each Party acknowledges, agrees and understands that it alone is responsible for the payment of any income or other taxes that it may owe to any federal, state or local governmental entity as a result of the transaction contemplated by this Agreement. Each Party acknowledges that it has received no representations, warranties or advice from the other Party relating to the tax ramifications of the transaction contemplated by this Agreement. Each Party will consult with its own tax advisors regarding any such tax matters.

10.    Except as provided in Section 5, the provisions of this Agreement are and shall be treated by the Parties as strictly confidential and the terms of this Agreement shall not be disclosed. No Party (nor any person or entity acting on behalf of any Party) shall issue or cause to be issued, or consent to any form of, any press statement or release concerning the existence, pendency, or resolution of the subject matter of this Agreement; provided, that nothing in this Section shall prohibit either Party from making any disclosure which its legal counsel reasonably deems necessary to comply with applicable law.

11.    This Agreement shall be construed in accordance with and governed by federal law and, to the extent that federal law is not applicable, by the internal laws of the State of California, without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than federal law and, to the extent that federal law is not applicable, by the internal laws of the State of California, to the rights or duties of the Parties. The venue for any suit between the Parties shall be Pasadena, California.

12.    Each Party hereto shall bear its own costs, attorneys' fees, and expenses in connection with the negotiation and execution of this Agreement.

13.    All notices, consents, reports and other communications (collectively, "notices") given by either Party hereto must be in writing and will be given by personal delivery, nationally recognized overnight courier service or by first class mail, certified or registered, postage pre-paid, return receipt requested (where available), to the other Party at its address specified below. All notices will be deemed effective upon personal delivery, or five (5) calendar days following deposit in the mail, or two (2) business days following deposit with any nationally recognized overnight courier service, if delivered or transmitted as follows:

If to Customer:

Linh Thuy Nguyen
Loc Duy Nguyen

Page 4 of 7

3091 Knickerson Drive
San Jose, CA 95148

If to Bank:

IndyMac Bank, F.S.B.
10860 Gold Center Drive, Suite 400
Rancho Cordova, CA 95670
Attention: David Pereira

Either Party may change the Person or address to which notice will be sent by giving written notice of such change to the other Party in the manner provided herein; provided, however, that such notice will be effective only upon actual receipt. For purposes of this Agreement, a "business day" is any day on which Bank is open for the performance of substantially all of its business functions, but in any event not including (a) any Saturday or Sunday, or (b) any federal legal public holiday.

14.    Neither Party will assign, sell, transfer, delegate or otherwise dispose of this Agreement or any of its rights or obligations under this Agreement without the prior written consent of the other Party. Any such purported assignment, sale, transfer, delegation or other disposition, except as permitted herein, will be null and void. Subject to the foregoing, this Agreement will be binding upon and will inure to the benefit of the Parties and their respective successors and assigns.

15.    It is the intent of the Parties that this Agreement be construed and interpreted in a manner such as to permit enforcement of all of its provisions. However, if any provision of this Agreement is held invalid or unenforceable in any jurisdiction for any reason, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without invalidating the remainder of such provision or the remaining provisions hereof, and such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

16.    The Parties agree that each will, from time to time, execute, acknowledge, and deliver, or cause to be executed, acknowledged and delivered, such amendments and supplements hereto and such further instructions as may be reasonably required or appropriate to further express the intention of the Parties or to facilitate the performance of this Agreement.

17.    No failure or delay on the part of either Party in exercising any right, privilege, power or remedy under this Agreement, and no course of dealing between the Parties, shall operate as a waiver of such right, privilege, power or remedy; nor shall any single or partial exercise of any right, privilege, power or remedy under this Agreement preclude any other or further exercise of any right, privilege, power or remedy or the existence of any other right, privilege, power or remedy. No waiver shall be effective against a Party unless signed in writing by an authorized officer of such Party.

18.    This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.

19.    The definitions of the terms in this Agreement shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine or neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning in effect as the word "shall." Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any person shall also be construed to mean such person's

Page 5 of 7

Implementation Of Rescission Agreement

successors and permitted assigns, (c) the words "herein," "hereof" and "hereunder," and similar words, shall be construed to refer to this Agreement in its entirety (including all exhibits to this Agreement) and not to any particular provision of this Agreement, and (d) all references herein to sections or exhibits shall be construed to refer to sections or exhibits of this Agreement.

20.    This Agreement has been negotiated at arm's length and between persons sophisticated and knowledgeable in the matters dealt with in this Agreement. Each Party has been represented, or has had the opportunity to be represented, by counsel of its own choice in connection with the negotiation, preparation, and execution of this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the Party that drafted it is not applicable and is expressly waived by each of the Parties. In the event that an ambiguity or question of intent or interpretation arises under this Agreement, this Agreement shall be construed as if drafted jointly by the Parties.

21.    Time is of the essence in respect to all provisions of this Agreement in which a definite time for performance is specified.

22.    Any capitalized terms used in any exhibit to this Agreement but not otherwise defined in such exhibit shall have the meanings as defined in this Agreement.

IN WITNESS WHEREOF, each of the undersigned Parties has duly executed and delivered this Agreement, or has caused this Agreement to be duly executed and delivered by one of its duly authorized officers, all as of the Effective Date.

Linh Thuy Nguyen and Loc Duy Nguyen ("Customer")

_____
Linh Thuy Nguyen

_____
Loc Duy Nguyen

IndyMac Bank, F.S.B. ("Bank")

By: _____

Name: David A. Pereira

Title: Asst. Vice President, Corporate Compliance

Rescission Agreement v.3.18.08

Implementation Of Rescission Agreement

# Exhibit A

## Calculation of Bank Obligation:

1. Charges Paid by Customer at or Prior to Closing:

| Item | Cost |
|---|---|
| | 26,040.00 |
| Loan Origination Fee (HUD-1 Line 801) | 500.00 |
| Appraisal Fee (HUD-1 Line 803) | 75.00 |
| Tax Service (HUD-1 Line 808) | 1,015.00 |
| Admin Fee (HUD-1 Line 809) | 7.00 |
| Flood Certification (HUD-1 Line 811) | 1,215.00 |
| Processing Fee (HUD-1 Line 810) | 760.00 |
| Funding Fee (HUD-1 Line 811) | 4.95 |
| MERS Fee (HUD-1 Line 811) | 465.00 |
| Interest (HUD-1 Line 901) | 530.00 |
| Settlement/Closing Fee (HUD-1 Line 1101) | 900.00 |
| Title Insurance (HUD-1 Line 1108) | 25.00 |
| Title Endorsements (HUD-1 Line 1111) | 40.00 |
| Sub Escrow (HUD-1 Line 1112) | 65.00 |
| Messenger Fee (HUD-1 Line 1113) | 125.00 |
| E-Documents (HUD-1 Line 1113) | 63.00 |
| Recording Fees (HUD-1 Line 1201) | 250.00 |
| Notary (HUD-1 Line 1303) | |
| Total Charges Paid by Customer at or Prior to Closing | 32,079.95 |

2. Interest Paid after Closing:

| Payment Month | Type of Payment | Payment Amount |
|---|---|---|
| | | 0 |
| None | Interest Payment | |
| | | 0 |
| | Total Interest Paid on Loan: | |

3. Summary:

| Item | Cost |
|---|---|
| | 32,079.95 |
| Charges Paid by Customer at or Prior to Closing | 0 |
| Interest Paid after Closing | |
| | 32,079.95 |
| Equals: Total Bank Obligation | |

## Calculation of Customer Payment:

| Item | Cost |
|---|---|
| | 620,000.00 |
| IndyMac Loan Balance | -32,079.95 |
| Less Total Bank Obligation | |
| | 587,920.05 |
| Customer Payment | |

Rescission Agreement v.3.18.08

THE LAW OFFICE OF
# LAN D. NGUYEN
ATTORNEY-AT-LAW
A PROFESSIONAL LAW CORPORATION
6633 NE Sandy Blvd., Suite B
Portland, OR 97213
Phone: (503) 280-0123
Cell: (503) 288-0123
Fax: (503) 288-0125
Lan.D.Nguyen@gmail.com

Admitted to Practice in Oregon and California

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO** Ms. Lois Jacobs | **FROM:** Lan D. Nguyen |
| **COMPANY** Kralik & Jacobs | **DATE:** APRIL 22, 2008 |
| **FAX NUMBER:** (626) 844-7643 | **TOTAL NO. OF PAGES INCLUDING COVER:** 3 |
| **PHONE NUMBER:** (626) 844-3505 | **SENDER'S REFERENCE NUMBER:** |
| **RE:** Nguyen, Loc D. & Linh T./Indymac | **YOUR REFERENCE NUMBER:** |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

THE LAW OFFICE OF
## LAN D. NGUYEN
ATTORNEY-AT-LAW
A PROFESSIONAL LAW CORPORATION
6633 NE Sandy Blvd., Suite B
Portland, OR 97213
Phone: (503) 280-0123
Cell: (503) 288-0123
Fax: (503) 288-0125
Lan.D.Nguyen@gmail.com

Admitted to Practice in Oregon and California

April 22, 2008

VIA REGULAR MAIL &
FACSIMILE (626) 844-7643

Ms. Lois Jacobs
Kralik & Jacobs
301 N Lake Ave., Suite 202
Pasadena, CA 91101

### Re: Nguyen, Loc D. & Linh T./Indymac Bank

Dear Lois:

This is in response to the offer made by Indymac in its March 25, 2008 letter, proposing that my clients tender to Indymac $587,920.05 as part of the rescission of the $620,000 residential loan my clients have with Indymac. Indymac's offer fails to address a number of issues, which I raise here.

1) <u>Actual Damage</u>. My clients are entitled to the actual damages they suffered as a result of Indymac's failure to comply with the Truth in Lending Act. We have not yet determined my clients' actual damages but any rescission agreement needs to take into account actual damages.

2) <u>Statutory Damage</u>. In *addition* to actual damage, TILA also allows for maximum statutory damage of $2,000. The facts of this case merit the maximum statutory damage.

3) <u>Attorney's Fees</u>. My clients are entitled to reasonable attorney's fees. While attorney's fees is only awarded in a successful action, we believe that we will be successful in any action to rescind the loan under 15 USC 1635 and that the attorney's fees incurred prior to filing suit will be part of the attorney's fees award. Please let me know if Indymac is

Ms. Lois Jacobs
April 22, 2008
Page 2


willing to pay the attorney's fees my clients have incurred to date and I will calculate my
time to date and send it to you.

4) <u>Damages to Credit Worthiness</u>.  As we discussed, one of the credit reporting agency
received a report that my clients failed to pay the mortgage.  In addition to damages
under TILA, we also have a claim under the Fair Debt Collection Practices Act for this
violation.  We would need confirmation that this transaction does not have a negative
effect on my clients' credit worthiness

5) <u>Other Claims</u>.  We also have claims under the Real Estate Settlement Procedure Act and
state laws.  We are consulting with various attorneys with specialty in this area.
However, we do not wish to pursue these claims if Indymac makes my clients whole.

6) <u>New Loan</u>.  As we discussed, if Indymac is willing to offer a new loan at no cost to my
clients with terms substantially similar to the one my clients were promised, that will go a
long way in resolving this matter.  In fact, my clients are willing to waive their actual
damage and claims under RESPA, state law, and Fair Debt Collection Practices Act if
this happens.  With their good credit, high down payment, and good income, this should
not be a problem.

My client is entitled to the above damages in addition to the refund of all finance
charges and fees paid.  We are willing to tender the proceeds of the loan as soon as we can agree
on an amount and as soon as my clients can get replacement financing.

Very truly yours,
The Law Office of Lan D. Nguyen
A Professional Law Corporation


Lan D. Nguyen


LDN/me
cc:          Client

**Kralik & Jacobs**
**Law Offices**

301 North Lake Avenue, Suite 202
Pasadena, California 91101
TEL: 626.844.3505
FAX: 626.844.7643

April 23, 2008

_**VIA FAX (503-288-0125) & U.S. MAIL**_

Lan D. Nguyen, Esq.
The Law Office of Lan D. Nguyen
6633 NE Sandy Blvd., Suite B
Portland, OR 97213

Re:    Loc D. & Linh T. Nguyen

Dear Lan:

This will acknowledge receipt of your letter yesterday evening regarding your clients' loan with IndyMac Bank, F.S.B. ("IndyMac") in the principal amount of $620,000 (the "Loan"). As you know, in response to issues raised by your clients, IndyMac provided your clients with a new Notice of Right to Cancel the Loan on January 2, 2008. Your clients elected to rescind the Loan on or about January 10, 2008. Three months have since gone by and they have failed to tender back to IndyMac the balance they owe after any finance or other charges are deducted. This amount is $587,920.05, which includes:

- $557,570.93 paid by IndyMac to your clients' previous mortgage lender, Washington Mutual;
- $22,975.11 paid by IndyMac to Addison Federal Credit Union;
- $75.00 paid by IndyMac to Bank of America; and
- $7,317.01 in cash paid at closing net of the appraisal fee they paid outside of closing.

To the extent you are disputing that this is the amount your clients owe, please advise me immediately.

Because IndyMac paid off the prior mortgage on your clients' home and other amounts they then owed, your clients have not had to make any monthly payments on those obligations since November 2007. Furthermore, because of the rescission notice, your clients have not made any loan payments whatsoever to IndyMac. That has resulted in savings of over $17,000 in interest payments during this time, which has been a substantial benefit to your clients.

Letter to Lan D. Nguyen, Esq.
April 23, 2008
Page 2 of 4

As we discussed and as you acknowledged in your letter, under the Truth-in-Lending Act ("TILA"), 15 U.S.C. §1601 et seq., your clients are required to tender back the net proceeds of the Loan as a result of their decision to rescind the transaction. <u>American Mortgage Network, Inc. v. Shelton</u>, 486 F.3d 815, 821 (4th Cir. 2007); <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167, 1173 (9th Cir. 2003). IndyMac sent you and your clients an Implementation of Rescission Agreement ("the Agreement") on March 25, 2008. The Agreement was intended to provide, among other things, that your clients would have another thirty days to tender the amount due to IndyMac. When we first spoke on April 16, 2008, you indicated that your clients had needed more time than the two days IndyMac originally gave them to review and execute the Agreement. They have now had almost one month to do so, however, the Agreement still has not been signed by your clients. Nor have they apparently taken any steps to obtain financing from another lender to fulfill their requirement to tender back the net loan proceeds to IndyMac.

Your letter recites various alleged rights and remedies to which you believe your clients are entitled. Under the circumstances, none of these claims are warranted.

First, your clients are not entitled to actual damages under TILA because there has been no violation of TILA by IndyMac. The TILA Disclosure Statement contained the correct and accurate provisions of your clients' loan with IndyMac. They contend, however, that either these were not terms they thought they would receive or the signatures on this document are not theirs. In accordance with 15 U.S.C. § 1640(b), within sixty days of the original transaction, IndyMac gave your clients a new Notice of Right to Cancel and allowed them to rescind the transaction, thereby curing any potential TILA violation. Moreover, your clients have suffered no actual damages due to any alleged action by IndyMac but, instead have not had to make any mortgage payments for five months, saving them thousands of dollars.

Second, as there has been no TILA violation, there is no viable claim for statutory damages. In addition, 15 U.S.C. § 1640(a)(2)(A)(i) does not fix statutory damages at $2,000 but, when warranted, provides for an award of as little as $200.

Third, attorneys' fees are awardable only if the borrower is successful in enforcing a TILA action. As discussed above, there has been no TILA violation by IndyMac and your clients cannot prevail because they cannot establish that they are and have been willing and able to tender back the net proceeds of the Loan.

Letter to Lan D. Nguyen, Esq.
April 23, 2008
Page 3 of 4

Fourth, as to your clients' allegations concerning credit reporting, they will be unable to prove that any damages have resulted. As we have discussed, upon its discovery that a notation may have been made about the Loan with one of the credit reporting agencies, IndyMac submitted a correction to that agency. To date, you have presented no evidence whatsoever that any adverse credit decision or other negative action resulted from any notation concerning the Loan. We must assume that there is none.

Likewise, even assuming that there are some private rights of action enforceable by your clients, there is no evidence of any type of violation of the Real Estate Settlement Procedure Act or any state laws. Thus, your vague and general assertion in this regard is without weight.

Lastly, as we have discussed during each of our telephone conversations on April 16, 18 and 22, 2008, your clients are welcome to apply to IndyMac for a new loan to repay the net proceeds of the Loan. Solely as an accommodation for any inconvenience that your clients may have experienced, if they refinance with IndyMac, it is willing to waive its lender origination fee that your clients would otherwise incur, provided, however, that your clients must complete a loan application, meet IndyMac's current credit and other underwriting requirements, and receive a Good Faith Estimate within the next seven calendar days (by April 30, 2008). This offer does not apply if your clients choose to refinance with another lender.

As to rates and terms for such refinancing, as I informed you last week, your clients should immediately call Jon Wolverton at 888-407-3863, ext. 1849, to discuss available options. It is my understanding that they have not yet discussed this with him. Should your clients decide to refinance with IndyMac, we appreciate your offer to waive any alleged claims they might have and would expect them to enter into a settlement agreement to that effect.

Lan, it is disappointing that your clients haven't yet signed the Agreement or provided a definitive statement as to what they intend do and when. Unfortunately, because we still cannot be assured that they will tender back the net proceeds owed to IndyMac promptly, IndyMac has no choice at this point but to set a deadline of Friday, April 25, 2008, by which your clients must acknowledge that they owe IndyMac $587,920.05, agree to provide by May 2, 2008, a Good Faith Estimate from IndyMac or another lender, and confirm that they do in fact intent to complete a refinance transaction with IndyMac or with another lender by May 31, 2008, to repay this amount. If we do not receive their binding commitment to this effect by this Friday, we will

Letter to Lan D. Nguyen, Esq.
April 23, 2008
Page 4 of 4


be forced to file an action for declaratory relief to confirm the rights of each party.  Please note that one possible outcome of that action could be that the court would find the Notice of Right to Cancel ineffective because of your clients' inability or unwillingness to tender the net proceeds to IndyMac and the Loan will be reinstated with all arrearages then due and owing.

IndyMac reserves all its rights and remedies regarding this matter.

Very truly yours,

Lois M. Jacobs

# KRALIK & JACOBS
## LAW OFFICES
301 North Lake Avenue, Suite 202
Pasadena, CA 91101
Tel: 626 844-3505
Fax: 626 844-7643

---

## FACSIMILE TRANSMITTAL SHEET

TO:    Lan D. Nguyen, Esq.          FROM: Lois M. Jacobs
     Fax (503)288-0125                 lois.jacobs@kralikjacobs.com

                      DATE:04/23/08

TOTAL # OF PAGES INCLUDING COVER: 5

---

PHONE NUMBER:                    SENDER' REFERENCE NUMBER:

---

RE:                              YOUR REFERENCE NUMBER
Loc D & Linh T. Nguyen

**COMMENT   __PLEASE REPLY   __ PLEASE  RECYCLE**

This message is confidential and is intended only for the addressee.  It may contain material protected by the attorney-client privilege and the work-product doctrine.  If you have received this message in error, please contact immediately Kralik & Jacobs at the above address.

TRANSMISSION VERIFICATION REPORT

```
TIME  : 04/23/2008 15:25
NAME  : KRALIK ASSOCIATES
FAX   : 6263514808
TEL   : 6263514800
SER.# : BROE2J355211
```

```
DATE,TIME            04/23  15:23
FAX NO./NAME         15032880125
DURATION             00:01:32
PAGE(S)              05
RESULT               OK
MODE                 STANDARD
                     ECM
```

**Lois Jacobs**

| | |
|---|---|
| **From:** | Lan Nguyen [lan.d.nguyen@gmail.com] |
| **Sent:** | Monday, April 28, 2008 2:58 PM |
| **To:** | Lois Jacobs |
| **Cc:** | Loc Nguyen |
| **Subject:** | Re: IndyMac - Nguyen Loan |

Dear Lois,

Sorry I missed your call.  I received your letter dated April 25, 2008 but only had a chance to discuss the matter with my client today.

My client has been dealing with Jon Wolverton on getting a new loan and that has been successful.  I am informed that the loan has been preapproved.  In order to put this behind us, my client has authorized me to tender to Indymac $575,000, subject to the loan going through.  This is his final offer.  We look forward to your positive response.

Always,

Lan.

--
Lan D. Nguyen
Attorney-at-Law
6633 NE Sandy Blvd., Suite B
Portland, OR 97213
Phone: (503) 280-0123
Cell: (503) 288-0123
Facsimile: (503) 288-0125

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

INDYMAC BANK, F.S.B., a federally chartered savings bank

## DEFENDANTS

LOC D. NGUYEN, an individual, LINH T. NGUYEN, an individual, and DOES 1 through 50, inclusive

**(b)** County of Residence of First Listed Plaintiff  Los Angeles County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lois Moonitz Jacobs
Kralik & Jacobs LLP
301 North Lake Avenue, Suite 202
Pasadena, CA 91101

Attorneys (If Known)

Lan D. Nguyen, Esq.
The Law Office of Lan D. Nguyen
6633 NE Sandy Blvd
Portland, OR 97213

C 08 02328

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

|   |   |   |   |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | **PRISONER** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

|   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1631 et seq.
Brief description of cause:
Declaratory relief under Truth in-Lending Act.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND        ☒ SAN JOSE

DATE
May 5, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: <u>47 USC 553</u>
                                                            Brief Description: <u>Unauthorized reception of cable service</u>

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.